UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EARLIE FUGATE                                                          PLAINTIFF

v.

UNITED GROUND EXPRESS, and                                            DEFENDANTS

      **REGISTERED AGENT**:
          CT Corporation System
          306 W. Main Street, Ste. 512
          Frankfort, KY 40601

BERNARDO ACOSTA

      SERVE VIA CONSTABLE:
          257 Black Water Ln
          Lexington, KY 40511

---

## COMPLAINT

---

Plaintiff, Earlie Fugate (hereinafter "Mrs. Fugate"), by and through counsel, for her Complaint against Defendants United Ground Express ("UGE") and Bernardo Acosta (hereinafter "Bernardo Acosta", "Mr. Acosta", and/or "Defendant Acosta"), alleges as follows:

## **INTRODUCTION**

1. This action seeks to recover damages for injuries suffered by Plaintiff, Earlie Fugate, which were the direct and proximate result of the hostile work environment, discrimination based on the Civil Rights Act of 1964 violations, Kentucky Civil Rights Act violations, and wrongful conduct of Bernardo Acosta in connection with Earlie Fugate's employment at United Ground Express.

## **JURISDICTION, PARTIES, AND VENUE**

2.  Plaintiff, Mrs. Fugate, is and at all relevant times has been a resident of the Commonwealth of Kentucky, residing at 945 Martin Luther King Dr., Paducah, McCracken County, Kentucky, 42001.

3.  Defendant, United Ground Express ("UGE"), has a principal office located at 233 S. Wacker Dr., Fourteenth (14th) Floor, WHQCT, Chicago, Illinois, 60606. Its registered agent for service is the CT Corporation System located at 306 W. Main St., Suite. 512, Frankfort, Kentucky, 40601.

4.  Defendant, Bernardo Acosta ("Mr. Acosta"), has at all times applicable hereto, been a resident of the Commonwealth of Kentucky with a working address 4000 Terminal Drive, Lexington, KY 40510. At all times applicable hereto, Mr. Acosta was an agent, servant, or employee of Defendant UGE. Mr. Acosta may be served by certified mail to 257 Black Water Ln, Lexington, KY 40511.

5.  This Court has personal jurisdiction over the parties, in that Mrs. Fugate is a citizen of this state, and Defendants UGE and Mr. Acosta conduct business in Fayette County and are subject to the laws of this Commonwealth, and Defendants actions, which are the cause of action set forth herein, took place in Fayette County, Kentucky.

6.  Venue is proper pursuant to KRS §452.460.

## FACTS

1.  Mrs. Fugate is an African American woman.

2.  Mrs. Fugate is over the age of forty.

3.  In 2013, Mrs. Fugate was diagnosed with multiple sclerosis ("MS")[1].

---

[1] Multiple Sclerosis is an autoimmune disorder wherein the immune system attacks the brain and spinal cord. Common symptoms of MS include numbness or weakness, tingling, lack of coordination, fatigue, cognitive problems, unsteady gait and/or inability to walk, and slurred speech. Oliver Tobin, Ph.D. *Multiple*

4. At all times relevant to this complaint, Mrs. Fugate was employed as a classified employee with status in the UGE.

5. On December 1, 2020, Mrs. Fugate was hired to work as a cross-utilized Compliance Coordinator. She was chosen for the position due to her experience and expertise in compliance.

6. On February 17, 2021, Mrs. Fugate transferred to the Bluegrass Lexington Airport location as a Compliance Coordinator.

7. Mrs. Fugate was placed under the supervision of Mr. Acosta at all times complained of herein.

8. Mr. Acosta harassed Mrs. Fugate and retaliated against her on account of her age and justified complaints filed with human resources.

9. On or about November 3, 2021, Mrs. Fugate was scheduled to put in her bid for her work schedule. However, Mr. Acosta gave her bid to a junior, male employee in violation of UGE's policies and UGE's contract with the International Association of Machinists and Aerospace workers ("Union").

10. On or about March 25, 2022, Mrs. Fugate complained to Human Resources about Mr. Acosta requiring Mrs. Fugate to bid against other Lead-employees against company policy.

11. Due to Mr. Acosta giving her bid away to another employee, Mrs. Fugate had to wait approximately two (2) months before getting her bid.

12. After Mrs. Fugate complained to Human Resources, Mr. Acosta brought Mrs. Fugate into his office and wrongfully reprimanded her.

---

*Sclerosis*, Mayo Clinic, (Dec. 24, 2022), https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269

13. At all times relevant to this complaint, Mrs. Fugate was subject to discriminatory comments and actions on account of her age, disability, race, gender, and complaints filed with human resources.

14. From early November, 2021 through February, 2022, Mr. Acosta mocked Mrs. Fugate's disability and made age inappropriate comments in front of and to other employees. Including but not limited to:

      a.  Disclosing Mrs. Fugate's medical condition;

      b.  Commenting on, ridiculed, and/or making derogatory gestures about Mrs. Fugate's medical condition; and

      c.  Making inappropriate and hurtful comments about Mrs. Fugate's memory.

15. On February 15, 2022, two of Mrs. Fugate's coworkers reported Mr. Acosta's wrongful and hurtful behavior to Human Resources.

16. After each instance, Mrs. Fugate brought the incident to the attention of her union representative or to Human Resources.

17. Mrs. Fugate was treated differently than other employees in her position within UGE on account of her disability, age, race, and gender.

18. Despite the numerous complaints against Mr. Acosta, no action was taken to remedy these issues.

19. On or about June 22, 2022, Mrs. Fugate met with the general manager for Compliance within Defendant UGE in Chicago. During this meeting, Mrs. Fugate reported Mr. Acosta's repeated discriminatory actions.

20. On July 25, 2022, as a result of the Defendants actions and failure to remedy those actions, Mrs. Fugate terminated her employment with Defendant UGE due to the repeated discrimination and hostile environment created by Mr. Acosta's actions.

21. On October 19, 2022, Mrs. Fugate received her Right to Sue letter from the U.S. Equal Employment Opportunity Commission.

22. Mrs. Fugate hereby incorporates each General Allegation into each Count below.

## COUNT I
## HOSTILE WORK ENVIRONMENT DISCRIMINATION
## BASED ON AGE (MR. ACOSTA)

23. Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

24. KRS §344.020(b) states:

> "to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability…; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities…."

25. KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

26. Mrs. Fugate is a woman over the age of forty (40) and thus is a member of a protected class.

27. As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in KRS §344.020, in that Mr. Acosta subjected Mrs. Fugate to unwelcome age distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

28. In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.010 et seq.

29. Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

30. But for Mr. Acosta's actions, Mrs. Fugate was qualified for the position for which she was hired for.

31. After constructively terminating Mrs. Fugate, Mr. Acosta hired an individual outside the protected class to perform her job duties.

32. UGE is liable for this conduct because Mr. Acosta is a direct supervisor of Mrs. Fugate and Human Resources were on notice during all relevant times and ratified said conduct by failure to act.

33. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

34. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

35. By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT II
## HOSTILE WORK ENVIRONMENT DISCRIMINATION

**BASED ON AGE (UGE)**

36. Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

37. KRS §344.020(b) states:

> "to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability…; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities…."

38. KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

39. Mrs. Fugate is a woman over the age of forty (40) and thus is a member of a protected class.

40. As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in KRS §344.020, in that Mr. Acosta subjected Mrs. Fugate to unwelcome age distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

41. In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.010 et seq.

42. Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

43. But for Mr. Acosta's actions, Mrs. Fugate was qualified for the position for which she was hired for.

44. After constructively terminating Mrs. Fugate, Mr. Acosta hired an individual outside the protected class to perform her job duties.

45. At all times complained of herein, Mr. Acosta was a direct supervisor of Mrs. Fugate.

46. Because supervisor(s) engaged in said conduct, starting in November, 2021 and continuing until and through March, 2022, the UGE is strictly liable for the age discrimination.

47. By the actions noted above, the UGE knew or should have known that the discriminatory conduct directed at Mrs. Fugate because of her age, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate because of her age. Mrs. Fugate was harmed due to the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

48. Additionally, as the UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination on account of Mrs. Fugate's age in violation of the Kentucky Civil Rights Act.

49. Mrs. Fugate was harmed as a result of the foregoing described conduct of Mr. Acosta.

50. As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earning, lost job classification, and lost wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

51. As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

52. By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT III
## HOSTILE WORK ENVIRONMENT DISCRIMINATION
## BASED ON GENDER (MR. ACOSTA)

53. Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

54. KRS §344.020(b) states:

> "to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability…; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities…."

55. KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

56. Mrs. Fugate is a woman and thus is a member of a protected class.

57. As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in KRS §344.020, in that Mr. Acosta subjected Mrs. Fugate to unwelcome gender distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

58. In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.010 et seq.

59. Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

60. UGE is liable for this conduct because Mr. Acosta is a direct supervisor of Mrs. Fugate and Human Resources were on notice during all relevant times and ratified said conduct by failure to act.

61. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

62. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

63. By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

<u>**COUNT IV**</u>
**HOSTILE WORK ENVIRONMENT DISCRIMINATION
BASED ON GENDER (UGE)**

64. Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

65. KRS §344.020(b) states:

"to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability…; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities…."

66. KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

67. Mrs. Fugate is a woman and thus is a member of a protected class.

68. As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in KRS §344.020, in that Mr. Acosta subjected Mrs. Fugate to unwelcome gender distinction that was

sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

69. In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.010 et seq.

70. Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

71. At all times complained of herein, Mr. Acosta was a direct supervisor of Mrs. Fugate.

72. Because supervisor(s) engaged in said conduct, starting in November, 2021 and continuing until and through March, 2022, the UGE is strictly liable for the gender discrimination.

73. By the actions noted above, the UGE knew or should have known that the discriminatory conduct directed at Mrs. Fugate because of her age, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate because of her gender. Mrs. Fugate was harmed due to the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

74. Additionally, as the UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination on account of Mrs. Fugate's gender in violation of the Kentucky Civil Rights Act.

75. Mrs. Fugate was harmed as a result of the foregoing described conduct of Mr. Acosta.

76. As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earning, lost job classification, and lost wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

77. As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

78. By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

<u>**COUNT V**</u>
**HOSTILE WORK ENVIRONMENT DISCRIMINATION**
**BASED ON DISABILITY (MR. ACOSTA)**

79. Mr. Acosta owed Mrs. Fugate a peaceful work environment, free from harassment, abuse, and/or discrimination.

80. KRS §344.010(5) defines "Discrimination" as

"any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons, or the aiding, abetting, inciting, coercing, or compelling thereof made unlawful under this chapter."

81. The Kentucky Civil Rights Act, KRS §344.030 provides that it shall be unlawful for an employer to discriminate against "a qualified individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position… unless an employer demonstrates that he is unable to reasonably accommodate an employee's… disability without undue hardship on the conduct of the employer's business."

82. As stated in paragraph 3 above, Mrs. Fugate was clinically diagnosed with Multiple Sclerosis in 2013.

83. Mrs. Fugate is a qualified individual with a disability and thus is a member of a protected class.

84. As set forth above, the actions of Mr. Acosta, starting in late August, 2017 and continuing until and through November 26, 2019, constituted "discrimination" as that term is defined in KRS §344.010, in that Mr. Acosta subjected Mrs. Fugate to unwelcome distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

85. By the actions noted above, Mr. Acosta subjected Mrs. Fugate to unwelcome comments, acts of distinction, and/or differentiated Mrs. Fugate from her coworkers.

86. Mr. Acosta's actions were based on Mrs. Fugate's disability.

87. Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

88. UGE is liable for this conduct because Mr. Acosta is a direct supervisor of Mrs. Fugate and Human Resources were on notice during all relevant times and ratified said conduct by failure to act.

89. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

90. As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

91. By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## <u>COUNT VI</u>
## HOSTILE WORK ENVIRONMENT DISCRIMINATION
## BASED ON DISABILITY (UGE)

92. Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

93. KRS §344.020(b) states:

> "to safeguard all individuals within the state from discrimination because of
> familial status, race, color, religion, national origin, sex, age forty (40) and over, or
> because of the person's status as a qualified individual with a disability…; thereby
> to protect their interest in personal dignity and freedom from humiliation, to make
> available to the state their full productive capacities…."

94. KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

95. As stated in paragraph 3 above, Mrs. Fugate was clinically diagnosed with Multiple Sclerosis in 2013.

96. In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act, KRS § 344.010 et seq.

97. At all times complained of herein, Mr. Acosta was a direct supervisor of Mrs. Fugate.

98. Because supervisor(s) engaged in said conduct, starting in late August, 2017 and continuing until and through November 26, 2019, the UGE is strictly liable for the disability discrimination.

99. By the actions noted above, the UGE knew or should have known that the discriminatory conduct directed at Mrs. Fugate because of her disability, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate because of her disability. Mrs. Fugate was harmed due to the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

100.     Additionally, as the UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination on account of Mrs. Fugate's disability in violation of the Kentucky Civil Rights Act.

101.     Mrs. Fugate was harmed as a result of the foregoing described conduct of Mr. Acosta.

102.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earning, lost job classification, and lost wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

103.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

104.     By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

<u>**COUNT VII**</u>
**DISCRIMINATION IN VIOLATION OF KRS §344.010 ET SEQ. (MR. ACOSTA)**

105.     Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

106.     KRS §344.020(b) states:

"to safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability…; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities…."

107.    KRS §334.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

108.    By the actions noted above, Mr. Acosta subjected Mrs. Fugate to humiliation, personal indignity, and violated her health and general welfare.

109.    As set forth above, the actions of Mr. Acosta, starting in late August, 2017 and continuing until and through November 26, 2019, constituted "discrimination" as that term is defined in KRS §344.020, in that Mr. Acosta subjected Mrs. Fugate to unwelcome distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

110.    As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

111.    As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

112.    By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT VIII
## DISCRIMINATION IN VIOLATION OF KRS §344.010 ET SEQ. (UGE)

113.    Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

114.     KRS §344.020(b) prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, sex, [and/or] age forty (40) and over".

115.     In perpetrating the above-described acts, Mr. Acosta, his agents, servants, and/or employees, engaged in unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act.

116.     Because supervisor(s) engaged in said conduct, starting in late August, 2017 and continuing until and through November 26, 2019, UGE is strictly liable for the discrimination.

117.     Additionally, UGE knew or should have known of the discriminatory conduct directed at Mrs. Fugate, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate. Mrs. Fugate was harmed because of the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

118.     Additionally, as UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination of Mrs. Fugate in violation of the Kentucky Civil Rights Act, KRS §344.010, et seq.

119.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

120.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering,

humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

121.    By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT IX
## RETALIATION IN VIOLATION OF KRS §344.280 (MR. ACOSTA)

122.    Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

123.    At all times mentioned in this complaint, KRS §344.280 was in full force and effect, and was binding on Defendant Acosta. KRS §344.280(1) prohibits Defendant from retaliating against any employee for engaging in a protected activity. Complaining of discrimination and harassment is a protected activity under 101 KAR 1:375.

124.    Defendant Acosta, and its agents, servants, and/or employees, engaged in unlawful retaliation in violation of KRS §344.280(1).

125.    Mrs. Fugate engaged in protected activity consisting of filing complaints with Human Resources and with the Union against Mr. Acosta and Defendant UGE because of the continued harassment and discrimination.

126.    Defendant Acosta, its agents, and/or employees, retaliated against Mrs. Fugate on the basis of her protected activity, and took material and adverse employment actions against her, including creating and permitting the discriminatory conduct to continue and improperly terminating Mrs. Fugate.

127.    Mrs. Fugate was harmed as a direct and proximate result of the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

128.      As a direct and legal result of Mr. Acosta's conduct, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings and wages in an amount not yet fully known, but in excess of the jurisdictional limits of this Court.

129.      As a direct and legal result of Mr. Acosta's conduct, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

130.      By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to statutory attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this court.

131.      At all relevant times, Mr. Acosta acted maliciously and oppressively, with wrongful intent to injure Mrs. Fugate, and acted with an improper motive amounting to malice, in conscious disregard of Mrs. Fugate's rights. Mr. Acosta acted in the face of a perceived risk that his actions violated Mrs. Fugate's rights under Kentucky law.

132.      Because the acts towards Mrs. Fugate were taken by Mr. Acosta in a deliberate and intentional manner in order to injure and damage her, Mrs. Fugate is entitled to punitive damages in an amount according to proof as against Mr. Acosta.

## <u>COUNT X</u>
## RETALIATION IN VIOLATION OF KRS §344.280 (UGE)

133.      Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

134.      At all times mentioned in this complaint, KRS §344.280(1) was in full force and effect, and was binding on Defendant UGE. KRS §344.280 prohibits Defendant from retaliating

against any employee for engaging in a protected activity. Complaining of discrimination and harassment is a protected activity under 101 KAR 1:375.

135.     In perpetrating the above-described acts, Mr. Acosta, his agents, servants, and/or employees, engaged in unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act.

136.     Because supervisor(s) engaged in said conduct, Defendant UGE is strictly liable for the discrimination.

137.     Additionally, Defendant UGE knew or should have known of the discriminatory conduct directed at Mrs. Fugate, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate. Mrs. Fugate was harmed because of the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

138.     Mrs. Fugate engaged in protected activity consisting of filing complaints with Human Resources against Mr. Acosta and Defendant UGE because of the continued harassment and discrimination.

139.     Mr. Acosta retaliated against Mrs. Fugate on the basis of her protected activity, and took material and adverse employment actions against her, including creating and permitting the discriminatory conduct to continue and improperly terminating Mrs. Fugate.

140.     Mrs. Fugate was harmed as a direct and proximate result of the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

141.     As a direct and legal result of Defendant UGE's conduct, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings and wages in an amount not yet fully known, but in excess of the jurisdictional limits of this Court.

142.    As a direct and legal result of Defendant UGE's conduct, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

143.    By reason of the conduct of Defendant UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to statutory attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this court.

## COUNT XI
## WRONGFUL TERMINATION IN VIOLATION OF
## KENTUCKY CIVIL RIGHTS ACT (MR. ACOSTA)

144.    Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

145.    KRS §344.280 makes it unlawful for an employer to retaliate against an employee for disclosing information to a person with authority over that employee which the employee reasonably believes violates federal or state statutes or regulations. This requires that an employee show (1) that she engaged in protected activity, (2) her employer subjected her to adverse employment action, and (3) a causal link between the two exists.

146.    Mrs. Fugate engaged in a protected activity when she reported the discrimination that she was being subjected to because of her disability, gender, and age to Human Resources by Mr. Acosta. Mrs. Fugate reasonably believed that the conduct she was being subjected to violated state law.

147.    While Mrs. Fugate's complaints were pending, Mr. Acosta repeatedly harassed, intimidated, and distinguished Mrs. Fugate in and around the workplace. Mrs. Fugate repeatedly notified Human Resources about the harassment and discrimination she was subjected to by Mr.

Acosta. On or about the time of her termination, Mrs. Fugate notified Human Resources about the discrimination and harassment that she was subjected to. Based on information and belief, Mrs. Fugate's complaints were not investigated.

148.    A causal link exists between Mrs. Fugate's complaints and the adverse employment action. The close temporal connection between Plaintiff's complaints and the adverse employment action gives rise to an inference of retaliatory conduct.

149.    The above-described retaliatory conduct violates the Kentucky Civil Rights Act and the public policy of the state of Kentucky.

150.    As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings and wages in an amount not yet fully known, but in excess of the jurisdictional limits of this Court.

151.    As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

152.    By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Plaintiff is entitled to statutory attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this court.

## COUNT XII
## WRONGFUL TERMINATION IN VIOLATION OF
## KENTUCKY CIVIL RIGHTS ACT (UGE)

153.    Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

154.    KRS §344.280 makes it unlawful for an employer to retaliate against an employee for disclosing information to a person with authority over that employee which the employee reasonably believes violates federal or state statutes or regulations. This requires that an employee show (1) that she engaged in protected activity, (2) her employer subjected her to adverse employment action, and (3) a causal link between the two exists.

155.    Mrs. Fugate engaged in a protected activity when she reported the discrimination that she was being subjected to because of her disability, gender, and age to Human Resources by Mr. Acosta. Mrs. Fugate reasonably believed that the conduct she was being subjected to violated state law.

156.    While Mrs. Fugate's complaints were pending, Mr. Acosta repeatedly harassed, intimidated, and distinguished Mrs. Fugate in and around the workplace. Mrs. Fugate repeatedly notified Human Resources about the harassment and discrimination she was subjected to by Mr. Acosta. On or about the time of her termination, Mrs. Fugate notified Human Resources about the discrimination and harassment that she was subjected to. Based on information and belief, Mrs. Fugate's complaints were not investigated.

157.    A causal link exists between Mrs. Fugate's complaints and the adverse employment action. The close temporal connection between Plaintiff's complaints and the adverse employment action gives rise to an inference of retaliatory conduct.

158.    The above-described retaliatory conduct violates the Kentucky Civil Rights Act and the public policy of the state of Kentucky.

159.    In perpetrating the above-described acts, Mr. Acosta, his agents, servants, and/or employees, engaged in unlawful harassment and discrimination in violation of the Kentucky Civil Rights Act.

160.    Because supervisor(s) engaged in said conduct, Defendant UGE is strictly liable for the discrimination.

161.    As a direct and legal result of the conduct of Defendant UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings and wages in an amount not yet fully known, but in excess of the jurisdictional limits of this Court.

162.    As a direct and legal result of the conduct of Defendant UGE, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

163.    By reason of the conduct of Defendant UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Plaintiff is entitled to statutory attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this court.

## COUNT XIII
## GENDER DISCRIMINATION IN VIOLATION OF
## TITLE VII (MR. ACOSTA)

164.    Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

165.    Title VII of the Civil Rights Act of 1964 states:

"it shall be an unlawful employment practice for an employer – (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee because of such individual's race, color, religion, sex, or national origin."

166.    42 U.S.C.S. §2000e-2 et seq. prohibits Mr. Acosta from discriminating against individuals based on "race, color, religion, national origin, and sex".

167.    Mrs. Fugate is a woman and thus is a member of a protected class.

168.     As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in 42 U.S.C.S. §2000e-2, in that Mr. Acosta subjected Mrs. Fugate to unwelcome gender distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

169.     In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §2000e-2.

170.     Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

171.     UGE is liable for this conduct because Mr. Acosta is a direct supervisor of Mrs. Fugate and Human Resources were on notice during all relevant times and ratified said conduct by failure to act.

172.     As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

173.     As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

174.     By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT XIV
## GENDER DISCRIMINATION IN VIOLATION OF
## TITLE VII (UGE)

175.     Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

176.     Title VII of the Civil Rights Act of 1964 states:

"it shall be an unlawful employment practice for an employer – (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee because of such individual's race, color, religion, sex, or national origin."

177.     42 U.S.C.S. §2000e-2 et seq. prohibits Mr. Acosta from discriminating against individuals based on "familial status, race, color, religion, national origin, and sex".

178.     Mrs. Fugate is a woman and thus is a member of a protected class.

179.     As set forth above, the actions of Mr. Acosta, starting in November, 2021 and continuing until and through late March, 2022, constituted "discrimination" as that term is defined in 42 U.S.C.S. §2000e-2 et seq., in that Mr. Acosta subjected Mrs. Fugate to unwelcome gender distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

180.     In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §2000e-2 et seq.

181.     Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

182.     At all times complained of herein, Mr. Acosta was a direct supervisor of Mrs. Fugate.

183.     Because supervisor(s) engaged in said conduct, starting in November, 2021 and continuing until and through March, 2022, the UGE is strictly liable for the gender discrimination.

184.     By the actions noted above, the UGE knew or should have known that the discriminatory conduct directed at Mrs. Fugate because of her gender, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate because of her gender. Mrs. Fugate was harmed due to the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

185.     Additionally, as the UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination on account of Mrs. Fugate's age in violation of Title VII of the Civil Rights Act of 1964.

186.     Mrs. Fugate was harmed as a result of the foregoing described conduct of Mr. Acosta.

187.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earning, lost job classification, and lost wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

188.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

189.     By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## COUNT XV
## DISCRIMINATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT (MR. ACOSTA)

190.     Mr. Acosta owed Mrs. Fugate a peaceful work environment, free from harassment, abuse, and/or discrimination.

191.     42 U.S.C. §12101, et seq defines "Discrimination" as

"any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons, or the aiding, abetting, inciting, coercing, or compelling thereof made unlawful under this chapter."

192.     The Americans with Disabilities of 1990, 42 U.S.C. §12101, et seq. provides that it shall be unlawful for an employer to discriminate against "a qualified individual on the basis of disability limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee… [who] can perform the essential functions of the employment position… unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business…."

193.     Mrs. Fugate, due to her diagnosis of Multiple Sclerosis, is a qualified individual with a disability and thus is a member of a protected class.

194.     As set forth above, the actions of Mr. Acosta, starting in late August, 2017 and continuing until and through November 26, 2019, constituted "discrimination" as that term is defined in 42 U.S.C. §12101, et seq., in that Mr. Acosta subjected Mrs. Fugate to unwelcome distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate employment and created an abusive working environment.

195.     By the actions noted above, Mr. Acosta subjected Mrs. Fugate to unwelcome comments, acts of distinction, and/or differentiated Mrs. Fugate from her coworkers.

196.     Mr. Acosta's actions were based on Mrs. Fugate's disability.

197.     Mrs. Fugate's work performance, duties, and ability to attend work meetings and/or gatherings were directly affected by Mr. Acosta's actions.

198.     UGE is liable for this conduct because Mr. Acosta is a direct supervisor of Mrs. Fugate and Human Resources were on notice during all relevant times and ratified said conduct by failure to act.

199.     As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has suffered and will continue to suffer special damages for lost earnings, lost job classification, and wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

200.     As a direct and legal result of the conduct of Mr. Acosta, Mrs. Fugate has and will continue to suffer general damages including, but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

201.     By reason of the conduct of Mr. Acosta, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

## <u>COUNT XVI</u>
## DISCRIMINATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT (UGE)

202.     Mrs. Fugate incorporates by reference the allegations set forth in the preceding paragraphs.

203.     42 U.S.C. §12101, et seq defines "Discrimination" as

"any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons, or the aiding, abetting, inciting, coercing, or compelling thereof made unlawful under this chapter."

204.     The Americans with Disabilities of 1990, 42 U.S.C. §12101, et seq. provides that it shall be unlawful for an employer to discriminate against "a qualified individual on the basis of disability limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee… [who] can perform the essential functions of the employment position… unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business…."

205.     In perpetrating the above-described acts and omissions, the UGE, its agents, servants, and/or employees, engaged in the unlawful harassment and discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

206.     At all times complained of herein, Mr. Acosta was a direct supervisor of Mrs. Fugate.

207.     Because supervisor(s) engaged in said conduct, starting in late August, 2017 and continuing until and through November 26, 2019, the UGE is strictly liable for the disability discrimination.

208.     By the actions noted above, the UGE knew or should have known that the discriminatory conduct directed at Mrs. Fugate because of her disability, but nevertheless failed to take prompt and effective remedial action. Accordingly, UGE is liable for the discriminatory conduct suffered by Mrs. Fugate because of her disability. Mrs. Fugate was harmed due to the foregoing described conduct of Mr. Acosta, which was a substantial factor in causing Mrs. Fugate harm.

209.     Additionally, as the UGE knew or should have known of the conduct of its employees, and nevertheless failed to take prompt and effective remedial action. UGE is liable for the actions of its employees for creating and permitting unlawful discrimination on account of Mrs. Fugate's disability in violation of the Americans with Disabilities Act.

210.     Mrs. Fugate was harmed as a result of the foregoing described conduct of Mr. Acosta.

211.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has suffered and will continue to suffer special damages for lost earning, lost job classification, and lost wages in an amount not yet fully known but in excess of the jurisdictional limits of this Court.

212.     As a direct and legal result of the conduct of UGE, Mrs. Fugate has and will continue to suffer general damages including but not limited to, mental pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, hurt feelings, and emotional distress, all in an amount to be proved at trial.

213.     By reason of the conduct of UGE, Mrs. Fugate has necessarily retained attorneys to prosecute the action on her behalf. Mrs. Fugate is entitled to attorneys' fees and costs, expert witness fees, and other appropriate relief as determined by this Court.

WHEREFORE, Mrs. Fugate, respectfully requests that this Court:

1.  Award Mrs. Fugate a monetary judgment for general damages according to proof, however, no less that the jurisdictional limit of this Court;

2.  Award Mrs. Fugate a monetary judgment for special damages in amounts according to proof, together with prejudgment interest;

3.  Award Mrs. Fugate her reasonable attorneys' fees and costs pursuant to KRS §344.050 and any other applicable statute;

4. Interest as provided by law;

5. Exemplary and punitive damages in amounts according to proof;

6. Injunctive relief to require Defendants to provide its employees and management with training related to discrimination and hostile work environments, and to develop and implement policies and procedures to ensure that effective remedial measures are taken when discrimination and hostile work environment practices are reported;

7. Grant her a trial by jury on all issues so triable; and

8. Grant her such other and further relief, both legal and equitable, to which she may appear entitled.

Respectfully Submitted,

Regard Law Group, PLLC

*/s/ Andre F. Regard*
Andre F. Regard (KBA #88254)
Amelia L. Kitchens (KBA #99261)
1500 Leestown Rd., Ste. 307
Lexington, Kentucky 40511
T: (859) 281-1318
F: (859) 966-2373
aregard@regardlaw.com
akitchens@regardlaw.com
***Counsel for Plaintiff***

## VERIFICATION

Plaintiff, Earlie Fugate, after first being duly sworn, state that she has read the foregoing and that the factual statements contained therein are true and correct to the best of her knowledge, information, and belief.

> Earlie Fugate
> ID kNbyJv7t5T7EP4aSQkJ1Y5wJ

EARLIE FUGATE

COMMONWEALTH OF KENTUCKY    )
                                           )
COUNTY OF FAYETTE                 )

Acknowledged, subscribed, and sworn to me by Plaintiff, EARLIE FUGATE, Individually, on this the 17th day of January, 2023.

NOTARY PUBLIC STATE AT LARGE

My Commission Expires: 1/17/23

> CAITLYN CAMPBELL
> Notary Public
> Commonwealth of Kentucky
> Commission Number KYNP42124
> My Commission Expires Dec 27, 2025

Page **33** of **33**