UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **EARLIE FUGATE,** | **CIVIL ACTION NO. 5:23-CV-08-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **UNITED GROUND EXPRESS and BERNARDO ACOSTA,** | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

The matter is before the Court on defendants United Ground Express' and Bernardo Acosta's motions for summary judgment. (DE 26, 27.) After reviewing the parties' briefs and the relevant law, the Court will GRANT in part and DENY in part the defendants' motions.

I.   **Background**

Earlie Fugate is a sixty-one-year-old female who, in 2013, was diagnosed with multiple sclerosis ("MS"). MS is a condition that can cause a great range of symptoms. Fugate's symptoms include watery eyes, leg cramps, balance issues, urinary leaks, vision issues, mood changes, and occasional memory loss. Despite her condition, Fugate is still able to walk, eat, sleep, handle her own money, and work with little to no limitations.

In 2019, Fugate was hired by United Ground Express ("UGE") to work as a customer service employee. UGE is a subsidiary of United Airlines and provides ground support for United flights. All of UGE's employees are represented by The International Association of Machinists and Aerospace Workers (the "Union"). In 2021, Fugate accepted a transfer to work at the Blue Grass Airport ("LEX") in Lexington, Kentucky. Fugate received a promotion a few months after this transfer, her new title being "Compliance Coordinator." Fugate was

1

considered the second-in-command for UGE at LEX. The first-in-command was Bernardo Acosta. Fugate was fifty-eight years old at all times relevant to her claims.

Based on the parties' briefs and discovery, Fugate's time with UGE was mostly harmonious until the end of 2021 when Acosta allegedly began mocking and commenting on Fugate's MS diagnosis and disclosing her condition to other UGE employees. Further, Acosta allegedly made derogatory hand gestures in reference to Fugate's condition while in the presence of others. Additionally, Fugate asserts that Acosta made repeated comments about her forgetfulness. Fugate reports that in February 2022, two of her coworkers reported these incidents to UGE's Human Resources department ("HR"). UGE and Acosta both deny having had any knowledge of Fugate's medical condition. Fugate's personnel file with UGE includes no mention of her MS diagnosis.

Another point of contention between the parties also began in late 2021. Fugate alleges that on November 3rd she placed a "bid" for her preferred work schedule. This bidding process was the mechanism UGE was required to use under its collective bargaining agreement (the "CBA") with the Union for assigning its employees' work schedules. Fugate asserts that her seniority entitled her to the shift she had bid for. Her bid, however, was not honored. Instead, Acosta awarded the shift to Russell Drake, a male employee who was junior to Fugate. Drake's employee classification with UGE was a "full-time cross-utilized Lead." According to UGE, this classification is important because under the CBA, Compliance Coordinator's (like Fugate) are not permitted to bid against leads (like Drake).

Nearly five months later in March 2022, Fugate met with HR to file a complaint regarding the bidding dispute. According to Fugate, Acosta found out about this meeting and verbally reprimanded her during a meeting in his office. Following this altercation, Fugate alleges that her hours were cut and Acosta treated her more unwelcoming than ever.

2

In addition to these specific instances of disagreement, Fugate and Acosta's working relationship struggled on a broader scale. Alleged (undated) examples of this difficult working relationship include: (1) an unwelcomed hug Acosta forced on Fugate on or about her first day at LEX; (2) multiple instances of Acosta shouting in the faces of female employees—including Fugate's; (3) a comment by Acosta in the presence of other employees that Fugate "was the oldest employee"; and (4) Acosta's disclosure to Fugate that he carried a gun to work in his backpack. Regarding Acosta's gun-comment, Fugate acknowledged the disclosure did not frighten her, but she later reported the incident to HR once she learned it was against airport policy to have a firearm on the premises.

Eventually, Fugate's frustrations with her employment boiled over in the summer of 2022. On June 1, 2022, Fugate alleges that Acosta caused her to suffer a head injury while loading and unloading luggage on a flight that had arrived at LEX. This allegation gives rise to a workers' compensation claim Fugate filed separate from this lawsuit. Nonetheless, June 1st was Fugate's last day working for UGE. She sought medical care for her injury later that day and was placed off work by her doctor sometime later.

During her absence, but before her resignation, Fugate met with HR multiple times. First, on June 14th, Fugate reported Acosta to HR for disclosing her medical condition to other employees. A meeting between Fugate and Acosta occurred thereafter where Acosta apologized, but no further action was taken. Then, on June 22nd, Fugate met with HR in UGE's Chicago office to discuss concerns she had about Acosta's conduct—specifically that she had felt retaliated against following her bidding complaint filed in March. Again, no further action was taken. On July 25th, Fugate officially submitted her resignation. Before resigning, however, Fugate had already secured a higher paying job with United Airlines.

The crux of Fugate's lawsuit is that Acosta repeatedly harassed her during the course of her employment with UGE at LEX. Fugate further alleges that UGE had notice of Acosta's

3

misconduct but did nothing.[1] Following her resignation, Fugate filed a charge of discrimination with the EEOC asserting claims of age discrimination, race discrimination, disability discrimination, and retaliation. Shortly after the charge was filed, the EEOC issued Fugate's right to sue letter. Fugate then filed her complaint with this Court alleging eight counts of discrimination against both Acosta and UGE. (DE 1.) Fugate alleges each defendant committed six violations of the Kentucky Civil Rights Act ("the Kentucky Act") and one violation each of Title VII and the Americans with Disabilities Act ("ADA").

## II. Analysis

### A. Summary Judgment

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, this Court must determine whether the evidence presents a

---

[1] Though Fugate avers that she promptly reported each instance of harassment she experienced to UGE's HR department, none of Fugate's complaints have been presented to the Court.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

Fugate asserts the following claims against both defendants: age-based hostile work environment in violation of the Kentucky Act (Counts I and II); sex-based hostile work environment in violation of the Kentucky Act (Counts III and IV); disability-based hostile work environment in violation of the Kentucky Act (Count V and VI); retaliation in violation of the Kentucky Act (Counts IX and X); wrongful termination in violation of the Kentucky Act (Counts XI and XII); gender discrimination in violation of Title VII (Counts XIII and XIV); and disability discrimination in violation of the ADA (Counts XV and XVI). In Counts VII and VIII, Fugate alleges discrimination against both defendants in violation of the Kentucky Act. These counts, however, do not charge the defendants with any specific form of discrimination. Thus, the Court reads these counts to be incorporated into the other counts charging the defendants with particularized violations of the Kentucky Act.

### i. Acosta is entitled to summary judgment on Counts I, III, V, XI, XIII, and XV.

In his motion, Acosta moves for the entry of summary judgment regarding all claims against him. (DE 27.) Save Count IX, which the Court will address later, Fugate does not object to Acosta's motion and consents to the entry of summary judgment. (DE 29 at 27.) Thus, summary judgment will be granted for Acosta on Counts I, III, V, XI, XIII, and XV.

### ii. None of Fugate's claims are preempted by the Labor Management Relations Act.

Before reaching the merits of Fugate's claims, UGE argues that § 301 of the Labor Management Relations Act ("LMRA") preempts all of Fugate's state-law claims. (DE 26 at 12-14.) Under § 301, a state-law claim is preempted if either (1) resolving the claim would require interpretation of the terms of a labor contract, or (2) the rights claimed by the plaintiff

were created by a labor contract instead of by state law. *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012).

Here, resolving Fugate's claims under the Kentucky Act will not require interpretation of the CBA. Each element of Fugate's state law claims pertains to the conduct and motivations of both UGE and Acosta. UGE's various claims that the CBA motivated its and Acosta's conduct does not require the Court to wade into the waters of CBA interpretation. Rather, such conduct and motivations can be evaluated independently from the CBA. Additionally, the rights claimed by Fugate, those being to be free from various forms of discrimination in the workplace, arise from the Kentucky Act, not the CBA. Thus, § 301 of the LMRA does not preempt Fugate's state-law claims.

### iii.   UGE is entitled to summary judgment on Count II because no "age-based" harassment occurred.

Fugate previously maintained that she did not intent to pursue her age-related discrimination claims. (DE 26 at 17, 67.) Fugate, however, responded to the merits of UGE's motion for summary judgment regarding her age-related discrimination claims. (DE 29.) Accordingly, the Court will address the age-related claims as an ongoing controversy.

Count II of Fugate's complaint alleges that UGE, through Acosta's conduct, is liable for creating a hostile work environment based on her **age** in violation of § 344.020 of the Kentucky Act. (DE 1 at 6-7.) The Kentucky Act is interpreted consistent with federal law. *Ammerman v. Bd. of Educ., of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000). Thus, Fugate must prove the following elements to make out a prima facie case for a hostile work environment claim based on age: (1) she is forty years old or older, (2) she "was subjected to 'harassment, either through words or actions, based on age,'" (3) the harassment affected her by "creating an objectively intimidating, hostile, or offensive work environment," and (4) "there is some basis of liability on the part of [UGE]." *McNeal v. City of Blue Ash, Ohio*, No.

6

23-3180, 2024 WL 4262532, at *7 (6th Cir. Sept. 23, 2024). UGE disputes the second and third elements.

UGE first argues Fugate has failed to show that any harassment occurred based on her age and that no genuine dispute of material fact exists as to this issue. (DE 26 at 18-19.) Through her verified complaint (DE 1 at 4) and deposition (DE 29 at 33), Fugate testified that Acosta disclosed and mocked her medical condition to other employees and made comments about her forgetfulness. Further, Fugate claimed that Acosta made it known that she was "the oldest of the employees," working for UGE at LEX. (DE 26 at 68.) For the purposes of its motion, UGE seemingly does not challenge the veracity of Fugate's factual allegations. Thus, there is no genuine dispute as to the material facts.

The Court finds that Acosta's comments alone do not constitute "harassment based on age," as required by the second prong of a prima facie case for an age-based hostile work environment claim. For one, Acosta's comments and conduct regarding Fugate's disability are not "age based" because MS can occur at any age.[2] Similarly, Acosta's comments regarding Fugate's forgetfulness are not "age based" because memory loss can also occur at any age and for a variety of reasons. *See Moore v. Carson*, 322 F. Supp. 3d 163, 172 (D.D.C. 2018), aff'd, 775 F. App'x 2 (D.C. Cir. 2019) (dismissing ADEA claim despite emails stating the employee "suffered from memory loss" because the emails did not state forgetfulness was "because of [the employee's] age."). And finally, Acosta's comments made in the regular course of business that Fugate was "the oldest employee" does not rise to "age-based" harassment because the comment is too vague, especially without more context, to be actionable as age discrimination. *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 783 (6th Cir. 2024) (employer's

---

[2] Mayo Clinic Staff, *Multiple Sclerosis: Overview*, MAYO CLINIC, (Dec. 24, 2022), https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269#:~:text=MS%20can%20occur%20at%20any%20age%2C%20but%20onset%20usually%20occurs,Sex.

comment, in rejecting raise request, that "experience" or age "does not matter" was "too vague" to constitute age-based harassment); *Erwin v. Potter*, 79 F. App'x 893, 898 (6th Cir. 2003) (compared to remarks made while implementing adverse employment actions, "remarks made during the regular course of business about age . . . are much more likely to be considered the kind of 'isolated and ambiguous' comments that do not trigger employer liability."). Thus, Fugate's claim of hostile work environment based on age fails the second prong of a prima facie case. This alone entitles UGE to summary judgment on Count II.

> ### iv. UGE is entitled to summary judgment on Count IV because the sex-based incidents of harassment did not create an objectively hostile environment.

Count IV of Fugate's complaint alleges that UGE, through Acosta's conduct, is liable for creating a hostile work environment based on **gender** discrimination in violation of the Kentucky Act. (DE 1 at 10.) To make out a prima facie case for this claim, Fugate is required to prove the following elements:

> (1) she is a member of a protected class (female), (2) she was subjected to harassment, either through words or actions, based on sex, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

*Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). UGE disputes the second and third elements.

Assuming Fugate can satisfy the second prong by proving that sex-based harassment did occur, the Court finds that Acosta's conduct did not create an objectively offensive work environment. In determining whether harassing-conduct created an objectively offensive work environment, courts are to view "the totality of the circumstances," and "examine the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Daniels v. Pike Cnty. Commissioners*, 706 F. App'x 281 (6th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, on Count IV Fugate offers the following facts: Acosta gave preferential treatment to a male during a shift-bidding process; Acosta yelled in the faces of women but not men; Acosta initiated an unwanted hug on Fugate's first day of work; and Acosta told Fugate he carried a gun. (DE 26 at 69-76.) These factual assertions are not in dispute. Additionally, Fugate testified that she was "subjected [] to unwelcome gender distinction that was sufficiently severe or pervasive so as to alter the conditions of Mrs. Fugate's employment and created an abusive working environment." (DE 1 at 9.) This allegation, however, is a legal conclusion the Court is not obligated to accept as true at the summary judgment stage. *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007).

Even considering the factual allegations above in the aggregate, the Court finds the incidents are insufficient to create an actionable hostile work environment claim. For one, the shift-bidding dispute and the unwanted hug from Acosta constitute "isolated incidents" that occurred once during Fugate's multiple years of employment with UGE. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) ("[i]solated incidents, however, unless extremely serious," do not alter the conditions of employment). Further, Fugate does not provide any details regarding the severity or frequency in which Acosta yelled in the faces of women but not men. And while Acosta's comments about his gun are troubling, Fugate indicated that the disclosure did not frighten her. (DE 26 at 96.) Considering all of these alleged incidents together, Fugate's workplace was not permeated with gender discrimination that was "severe or pervasive," enough "to alter the conditions of [her] employment." *Harris*, 510 U.S. at 21. As a result, UGE is entitled to summary judgment as on Count IV of the complaint.

### v. UGE is entitled to summary judgment on Count VI because Fugate is not "disabled" as defined by the Kentucky Act.

Count VI of Fugate's complaint alleges that UGE, through Acosta's conduct, is liable for creating a hostile work environment based on disability discrimination in violation of the Kentucky Act. (DE 1 at 14.) To make out a prima facie case for this claim, Fugate is required to prove the following elements:

> (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures."

*Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002). In its motion, UGE seems to only contest the first and fourth elements.

First, UGE contends that Fugate is not "disabled" as defined by the Kentucky Act. Under the Kentucky Act, "disability" is defined as: "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." KRS § 344.010(4). It is not clear from Fugate's pleadings which prong of the disability-definition provision she claims her MS satisfies. Accordingly, the Court will evaluate each prong to determine whether Fugate's MS diagnosis satisfies any.

Under the **first prong** of § 344.010(4), "[s]imply asserting a MS diagnosis will not establish a disability." *Cunningham v. Humana Ins. Co.*, No. 3:10-CV-56-H, 2011 WL 4054689, at *3 (W.D. Ky. Sept. 12, 2011). Rather, a plaintiff "must also show the disease substantially limited a major life activity." *Id*. Similarly, proving a disability under the **second prong** of § 344.010(4) is predicated on showing a "record" of a substantial impairment that limits a major life activity. *MX Grp., Inc. v. City of Covington*, 293 F.3d 326,

339 (6th Cir. 2002).[3] To constitute a "substantial impairment" under either prong, the major life activity must be "significantly restricted," as compared to "the average person." *Turner v. Sullivan Univ. Sys., Inc.*, 420 F.Supp.2d 773, 783 (W.D. Ky. 2006).

Here, based on the undisputed facts, Fugate has failed to show that her MS **substantially** limits her ability to perform major life activities or that she has any record of such limitations. Fugate's MS symptoms include "watery eyes, leg cramps, balance issues, urinary leaks, vision issues, mood changes, and occasional memory loss." (DE 29 at 11.) Fugate admits that her symptoms do not prevent her from walking, eating, sleeping, handling her own money, or working. (DE 26 at 62.) Thus, it is clear to the Court that Fugate does not satisfy the first or second prongs of § 344.010(4) because her MS does not substantially impair any major life activity. S*ee, e.g., Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 735 (8th Cir. 2010) (finding plaintiff with MS symptoms did not have a disability because of failure to show substantial limitation on major life activity); *but cf. Braunling v. Countrywide Home Loans*, 220 F.3d 1154, 1157 (9th Cir. 2000) (finding plaintiff suffering debilitating consequences of MS was disabled).

To satisfy the disability-definition under the **third prong** of § 344.010(4), Fugate must meet a two-part test by demonstrating that (1) UGE knew of her disability, and (2) UGE thought her disability prevented her from performing a broad class of job duties. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 594 (Ky. 2003) (citing *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)). The Court's focus in a regarded-as-disabled claim is on the state of mind of the employer. *MX Grp., Inc.*, 293 F.3d at 340.

---

[3] While the ADA has been amended to no longer require proof of an "impairment that limits life activity," the Kentucky Act has not been similarly amended. Thus, while typically interpreted in lockstep, federal courts have declined to apply the amendment made to the ADA to claims brought under the Kentucky Act. *See, e.g., Azzam v. Baptist Healthcare Affiliates, Inc.*, 855 F. Supp. 2d 653, 658, n.2 (W.D. Ky. 2012).

As to part one, UGE clearly creates a genuine dispute of material fact by alleging that Acosta did not know about Fugate's MS diagnosis. Notwithstanding, Fugate cannot satisfy part two of the test. Here, no facts have been brought to the Court's attention which suggest that either Acosta or UGE thought that Fugate's MS diagnosis prevented her from performing a broad class of job duties. While Acosta commented on Fugate's forgetfulness, these comments do not relate to the defendants' state of mind as it pertained to Fugate's ability to perform a **broad class** of job duties. And Fugate has failed to demonstrate that a genuine dispute of material fact exists as to this point. Thus, it is clear to the Court that Fugate does not satisfy any disability-definition under § 344.010(4).[4] Accordingly, UGE is entitled to summary judgment on Count VI.

### vi. Neither Acosta nor UGE are entitled to summary judgment on Counts IX and X.

Counts IX and X charge both defendants with engaging in retaliatory conduct in violation of § 344.280 of the Kentucky Act. To make out a prima facie case of retaliation under the Kentucky Act, which is interpreted consistent with federal law, Fugate must establish the following: (1) she engaged in a protected activity; (2) the exercise of her civil rights was known by the defendants; (3) thereafter, the defendants took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). This Court recognizes that although claims under the Kentucky Act "cannot typically be asserted against individuals, an individual can be liable for retaliation." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000).

---

[4] UGE argues that even if the Court found Fugate to be disabled under § 344.010(4), she cannot prove that any disability-harassment created a hostile environment. The Court will not reach this issue, however, because the Court has found that Fugate cannot satisfy the statutory definition of "disabled" under the Kentucky Act.

In their motions for summary judgment, the defendants have challenged only the third element; that Fugate was not subjected to an adverse employment action. (DE 26 at 30-32) (DE 27 at 10-11.) In response, Fugate contends she was constructively discharged. (DE 29 at 18-19.) A constructive discharge occurs "when the employer, rather than acting directly, deliberately mak[es] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). To survive summary judgment on a claim of constructive discharge, the plaintiff must adduce some evidence "to show that 1) the employer deliberately created intolerable working conditions, as perceived by a **reasonable person**, and 2) the employer did so with the **intention** of forcing the employee to quit." *Id.* at 728 (emphasis added). For prong one, a court considers whether any of the following factors is present for resolving the "reasonable person" inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable."

*Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir. 2001) (citation omitted). For the second prong, Fugate must present some evidence that the defendants' acted with the intent of forcing her to quit. *Laster*, 746 F.3d at 728. Fugate can accomplish this by showing that her "resignation was a reasonably foreseeable consequence of the employer's action." *Smith v. LHC Grp., Inc.*, 727 F. App'x 100, 106 (6th Cir. 2018).

The crux of Fugate's constructive discharge claim is that she was forced to resign as a result of: (1) being subjected to repeat harassment by Acosta, to which UGE took no remedial action (DE 29 at 3), (2) being denied a shift-bid to which she was entitled by virtue of her seniority, and (3) a reduction in hours after she filed complaints with HR (DE 26 at 78). The defendants contend that Fugate's resignation

13

was voluntary and merely a step along the path in procuring higher-paying employment with United. (DE 26 at 3, 8, 25.) Additionally, UGE argues that a physical injury contributed to Fugate's resignation. (DE 26 at 25.) With these facts in mind, the defendants contend that Fugate has not created a genuine dispute of material fact as to the constructive discharge issue. However, Fugate's deposition testimony includes reference to the facts that she rests her constructive discharge theory on. Her deposition testimony is based on personal observations and experience and is affirmative evidence the Court must consider for summary judgment purposes. *Anderson*, 477 U.S. at 255.

Based on the foregoing, the parties' factual theories on the constructive discharge issue are clearly in conflict. A genuine dispute of material fact exists as to both the first and second prongs of the constructive discharge claim. For prong one, a reasonable person could perceive the defendants deliberately created intolerable working conditions on these facts. And as to prong two, the defendants' conduct could have rendered it reasonably foreseeable that Fugate would be forced to quit. As such, neither UGE or Acosta are entitled to summary judgment on Counts IX or X based on the foregoing argument.

Next, UGE argues that if Fugate can make out a prima facie case for retaliation, it had a legitimate, non-retaliatory purpose in taking the adverse employment action against her. In a retaliation case, the *McDonnell Douglas* burden shifting framework is applicable. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). So, UGE can escape liability if it shows a legitimate, non-retaliatory purpose for Fugate's constructive discharge and Fugate is unable to prove the proffered purpose is pretextual. *Id*.

Here, UGE argues that the events leading to Fugate's alleged constructive discharge were not born out of discrimination but were instead the result of the nature of her position.

For example, UGE contends that Fugate's position as a Compliance Coordinator led to the reduction in her hours and the denial of her preferred shift-bid. (DE 26 at 32) ("[s]he was the only Compliance Coordinator, and she failed to understand the bidding procedure once she accepted her promotion."). Even if true, part of Fugate's constructive discharge theory is that repeated harassment from Acosta led to her resignation. With this in mind, a genuine dispute of material fact exists as to whether UGE's proffered non-retaliatory explanation is a legitimate explanation of Fugate's constructive discharge. A reasonable jury could find that "the nature of Fugate's position" is insufficient to explain the allegations of repeated harassment which she claims contributed to her resignation. Thus, UGE fails to offer a basis for granting it summary judgment on Count X.

### vii.  UGE is entitled to summary judgment on Count XII because the claim is preempted by the Kentucky Act.

Count XII of Fugate's complaint is a common law wrongful termination claim. UGE moves for summary judgment on this count. (DE 26 at 33.) The Court notes that in her response to UGE's motion, Fugate does not address or object to UGE's request to dismiss Count XII. Nevertheless, for reasons independent of Fugate's failure to address UGE's arguments, UGE is entitled to summary judgment on Count XII.

Kentucky common law recognizes a wrongful termination cause of action when an employee's discharge is "contrary to a fundamental and well-defined public policy as evidenced by existing law." *Grzyb v. Ev*ans, 700 S.W.2d 399, 401 (Ky. 1985). When a plaintiff relies on a violation of the Kentucky Act as the "well-defined public policy" on which their wrongful termination claim is based, that statute "preempts the field of its application." *Id.*

Here, Fugate bases her wrongful termination claim on a violation of the Kentucky Act, specifically § 344.280's bar against retaliatory discharges. (DE 1 at 23.) Thus, because the public policy underpinning Fugate's wrongful termination claim is derived from the

Kentucky Act, her claim is preempted by that Act. As such, UGE is entitled to summary judgment on Count XII of Fugate's complaint.

### viii. UGE is entitled to summary judgment on Count XIV because Fugate failed to exhaust her administrative remedies.

Count XIV charges UGE with gender discrimination in violation of Title VII. UGE argues that Count XIV should be dismissed because Fugate failed to exhaust her administrative remedies. (DE 26 at 10.) More specifically, UGE argues Fugate failed to exhaust her remedies because she did not allege gender discrimination in her EEOC complaint. It is well accepted that plaintiffs charging employment discrimination cannot bring claims in a federal lawsuit that were not included in their EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Plaintiffs may, however, pursue an "uncharged claim" if the "facts related . . . to the charged claim would [have] prompt[ed] the EEOC to investigate" the uncharged claim. *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (quoting *Davis v. Sodex*ho, 157 F.3d 460, 463 (6th Cir. 1998)). And while it is true that courts liberally construe EEOC complaints, uncharged claims must still be reasonably related to "the factual allegations in the EEOC charge," to be validly raised in a subsequent federal lawsuit. *Younis*, 610 F.3d at 362.

Here, Fugate's EEOC charge specifically alleged employment discrimination in the following forms: race discrimination, disability discrimination, age discrimination, and retaliation. (DE 26 at 195.) Absent from Fugate's charge is any mention of facts that suggest gender was a characteristic that led her to be treated differently in the workplace. In fact, Fugate's EEOC charge, in full, is a one-paragraph explanation that describes only the following facts: (1) the nature of her employment with UGE, (2) her June meeting with HR to complain about her medical information being improperly disclosed, and (3) her resignation from UGE. Fugate nonetheless argues that her charge included factual

allegations that would have prompted the EEOC to investigate gender discrimination. In support of this argument, Fugate contends that "[i]t is no stretch to imagine that an employer who has been accused of discrimination against a person because of race, age, and disability would also discriminate against that same person because of her gender." (DE 29 at 6.) This argument is unavailing. Such an argument "would undermine the standard set by *Younis* and permit any generic one-issue EEOC claim to cover all other forms of discrimination in the workplace." *Golden*, 724 F. App'x at 445. Thus, put simply, Fugate's charge did not allege facts that would "prompt the EEOC to investigate," a Title VII gender discrimination claim. *Id*. Accordingly, Fugate failed to exhaust her administrative remedies as to her claim of gender discrimination in violation of Title VII, and UGE is therefore entitled to summary judgment on Count XIV.[5]

### ix.   UGE is not entitled to summary judgment on Count XVI.

Count XVI charges UGE with disability discrimination in violation of the ADA. First, UGE argues that Fugate is unable to make out certain elements of her prima facie case for an ADA disability discrimination claim. Because Fugate does not present direct evidence of disability discrimination, the Court applies the *McDonnell Douglas* burden-shifting analysis. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 890 (6th Cir. 2016). Fugate's prima facie case under this analysis requires proof that: (1) she was disabled; (2) she was otherwise qualified for her position with or without a reasonable accommodation; (3) she experienced an adverse employment action; (4) UGE knew or had reason to know of her disability; and (5) after her termination, her position remained open or the disabled individual was replaced. *Id*. UGE

---

[5] UGE also argues that Fugate cannot make out her prima facie case for gender discrimination under Title VII. The Court will not reach this argument, however, having found that Fugate failed to exhaust her administrative remedies.

disputes the third and fourth elements of Fugate's prima facie case.[6] (DE 26 at 26-29.) As previously discussed, a genuine dispute of material fact exists as to the adverse employment action element. *Supra* section (vi). This leaves only UGE's argument that it did not know or have reason to know of Fugate's disability.

For the fourth element, courts look to whether the person who took the adverse employment action against the plaintiff knew of the plaintiff's protected characteristic. *Messenheimer v. Coastal Pet Prod., Inc.*, 764 F. App'x 517, 519 (6th Cir. 2019). In this case, that individual is Acosta. UGE states in its motion that "Fugate never disclosed her disability to UGE or Mr. Acosta." (DE 26 at 27.) Acosta testified consistent with that assertion in his deposition. In her deposition, however, Fugate testified that Acosta was aware of her disability. (DE 29 at 28.) The facts in discovery are thus clearly in conflict. As such, a genuine dispute of material fact exists and UGE is not entitled to summary judgment based on its foregoing argument.

Next, UGE argues that even if Fugate can make out a prima facie case of disability discrimination under the ADA, it has a legitimate, non-discriminatory reason that shifts the burden back to Fugate to prove pretext. (DE 26 at 27.) UGE focuses most of its analysis on why Fugate cannot show that its legitimate, non-discriminatory reason is pretextual. This puts the cart before the horse, however, because a genuine dispute of material fact exists as to whether UGE presents a sufficient legitimate, non-discriminatory explanation for Fugate's constructive discharge. UGE's legitimate, non-discriminatory reason for Fugate's constructive discharge is identical to the non-retaliatory reason UGE proffered for Fugate's retaliation claim above. *Supra* section (vi). UGE's argument fails here for the same reason it

---

[6] As to the first element, although UGE argues that Fugate cannot establish a qualifying disability under the Kentucky Act, it does not seem to challenge Fugate's ability to do so under the broader definition of disability afforded by the ADA. (DE 26 at 26.)

did above. *Id.* Recall, Fugate's constructive discharge claim is based on the following facts: (1) repeat harassment by Acosta and no remedial action by UGE (DE 29 at 3), (2) denial of a shift-bid, and (3) a reduction in hours after she filed complaints with HR (DE 26 at 78). UGE's proffered reason may offer a legitimate, non-discriminatory explanation for the latter two events. But a genuine dispute of material fact exists as to whether UGE offers a non-discriminatory explanation as to why Fugate was subjected to the treatment which she alleges constituted harassment. Accordingly, UGE is not entitled to summary judgment on Count XVI based on this argument either.

### B. Damages

#### i. UGE is not entitled to summary judgment on Fugate's claim for emotional distress damages under the Kentucky Act.

In her answer to interrogatories, Fugate indicated that she seeks emotional distress damages. (DE 26 at 34.) In response, UGE argues that emotional damages are not available under the Kentucky Act. (*Id.*) It is well settled Kentucky law that an award of emotional damages is available under the Kentucky Act. *McNeal v. Armour and Co.*, 660 S.W.2d 957, 958 (Ky. App. 1983); *Childers Oil Co. v. Adkins*, 256 S.W.3d 19, 28 (Ky. 2008). UGE argues, however, that this Court should disregard that precedent. The Court declines to do so. "When a federal court interprets state law, the substantive law of the state in which the district court sits must be applied." *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 433 (6th Cir. 2004). Moreover, "[i]f the state supreme court has spoken on the issue, its decision should be followed." *Id*. Kentucky's high court has clearly spoken on this issue. *See McNeal*, 660 S.W.2d at 958; *Childers Oil*, 256 S.W.3d at 28. Thus, UGE is not entitled to summary judgment on Fugate's claim for emotional distress damages.

UGE counters that Fugate is still not entitled to emotional distress damages (under state or federal law) because she has identified no expert to prove her claim. (DE 26 at 37.)

For Fugate's remaining state-law claims, plaintiffs are not required to offer expert proof in seeking emotional damages for claims under the Kentucky Act. *Indiana Insurance Co. v. Demetre*, 527 S.W. 3d 12, 39 (Ky. 2017). As for Fugate's only remaining federal law claim, emotional distress damages are not available under the ADA. *Kovatsenko v. Kentucky Cmty. & Tech. Coll.*, No. CV 5:23-066-DCR, 2023 WL 3346108, at *4 (E.D. Ky. May 10, 2023) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)). Thus, to the extent UGE requests summary judgment for Fugate's emotion distress damages under the Kentucky Act, it is denied. And to the extent UGE requests summary judgment for Fugate's emotion distress damages under the ADA, it is granted.

### ii. UGE is not entitled to summary judgment on Fugate's claim for future wages lost.

In her answer to interrogatories, Fugate indicated that she seeks future wages lost. (DE 26 at 34.) In response, UGE argues it is entitled to summary judgment on Fugate's claim for future wages lost. (*Id* at 39.) UGE provides no legal basis for why it is entitled to summary judgment on this issue—arguing only that Fugate made more money once she resigned from UGE and is thus barred from seeking future wages lost. With no authority to base its argument on, the Court is not convinced by UGE's position.

There is a genuine dispute of material fact regarding Fugate's ambitions while at UGE. Fugate testified both that she wanted to advance within UGE and eventually move on to United. (DE 29 at 25.) If Fugate had not resigned with UGE, she could have advanced with the company and potentially outearned the position she took with United. Accordingly, UGE has not met its burden as the moving party to show no genuine dispute of material fact exists as to this issue. Thus, UGE is not entitled to summary judgment on the issue of future wages lost. *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021) ("it is the moving party's burden to show the absence of a genuine dispute of material fact.").

### iii. UGE is not entitled to attorneys' fees.

Finally, UGE requests the Court to make a limited award of attorneys' fees. (DE 26 at 40.) The Court declines to do so under either its inherent authority to curb bad-faith litigation or the authority granted to it by 28 U.S.C. § 1927. Though several of Fugate's claims have been dismissed herein, none of those claims seem to have been brought in bad faith. Moreover, none of Fugate's claims have been prosecuted by means of sanctionable tactics. Thus, the Court will not make a limited award of attorneys' fees at this time.

## III. Conclusion

For the foregoing reasons, as previously ORDERED

1. UGE's motion (DE 26) is GRANTED in part and DENIED in part, granted insofar as it is entitled to summary judgment on Counts II, IV, VI, XII, and XIV, denied insofar as it is not entitled to summary judgment on Counts X and XVI;

2. UGE's motion for fees (DE 26) is DENIED; and

3. Acosta's motion (DE 27) is GRANTED in part and DENIED in part, granted insofar as he is entitled to summary judgment on Counts I, III, V, XI, XIII, and XV, denied insofar as he is not entitled to summary judgment on Count IX.

This 7th day of November, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY